## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| TYRONE CLARK, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:24-cv-12389 |
| v. | ) | |
| | ) | |
| JOHN J. FARRELL, EDWARD TWOHIG, | ) | |
| JOHN UNDERWOOD, UNKNOWN | ) | |
| BOSTON POLICE OFFICERS, and the | ) | |
| CITY OF BOSTON, | ) | |
| | ) | **Jury Trial Demanded** |
| Defendants. | ) | |

### <u>COMPLAINT</u>

Plaintiff, TYRONE CLARK, by his attorneys LOEVY & LOEVY, complains of
JOHN J. FARRELL, EDWARD TWOHIG, JOHN UNDERWOOD, UNKNOWN
BOSTON POLICE OFFICERS, and the CITY OF BOSTON, as follows:

### Introduction

1.    Plaintiff Tyrone Clark was wrongfully convicted of rape, kidnapping,
and robbery. He is totally innocent of all these crimes.

2.    He was identified as a suspect and evidence was wrongly fabricated
against him by police, who were looking to "solve" the crime by finding a suspect
and shaping the evidence to fit that person.

3.    To ensure that Plaintiff would be charged and prosecuted, Defendants
Farrell, Twohig, and Underwood created an unduly suggestive identification
procedure to coerce the victim into identifying Plaintiff. Their suggestive

identification procedures failed to induce that witness' three companions (and also eyewitnesses) to implicate Plaintiff.

4.    Defendants also fabricated additional evidence suggesting Plaintiff's guilt. This included purported "confidential informant" evidence that was fabricated by Defendant Underwood.

5.    To support their false story and prevent their case from unravelling, Defendants hid exculpatory evidence from Plaintiff and prosecutors. This included the destruction of exculpatory physical evidence.

6.    Based on the force of the fabricated evidence and the suppression of exculpatory evidence, Plaintiff was charged, prosecuted, and wrongly convicted of rape, robbery and kidnapping.

7.    The actions of the individual Defendants reflected the Boston Police Department's (BPD) unwritten custom or policy to not investigate exculpatory evidence and to withhold it from criminal defendants. The policymakers of Defendant City of Boston routinely failed to properly supervise and train its police officers and failed to discipline officers who withheld or fabricated evidence.

8.    The City of Boston also failed to have policies in place to prevent unlawful suggestive identification techniques and/or that allowed officers to fabricate the existence of "confidential informant" evidence to introduce false evidence against officers' chosen suspects.

9.    As a result of Defendants' misconduct, Plaintiff was sentenced to life in prison for the rape conviction; 25-30 years to be served from and after the life

sentence for the kidnapping conviction and 8-10 years for the robbery conviction which could be served concurrently with the sentence for kidnapping.

10.    Plaintiff never stopped professing his innocence during his long fight for justice.

11.    His fight was finally vindicated when on November 24, 2021, and August 24, 2023, the Suffolk Superior Court granted Plaintiff's motions for new trial based on questions regarding the fairness of the investigation and police mishandling of evidence. The Suffolk County District Attorney filed *nolle prosequi* shortly after the vacating of the convictions, finally ending all wrongful prosecutions against Plaintiff.

12.    Plaintiff had served over 47 years in prison for crimes he did not commit. He spent the prime years of his life incarcerated in harsh conditions, facing physical and emotional threats. He lost invaluable time and experience with his family. The harms his wrongful conviction have caused him—emotional, physical, and otherwise—have been profound and can never be fully compensated.

13.    Plaintiff now seeks justice for the harm that Defendants caused and redress for the loss of liberty and the terrible hardship that Plaintiff has endured and continues to suffer because of Defendants' misconduct.

## Jurisdiction and Venue

14.    This action is brought under 42 U.S.C. § 1983 and Massachusetts law to redress Defendants' tortious conduct and their deprivation of Plaintiff's rights secured by the U.S. Constitution.

15.    This Court has jurisdiction of Plaintiff's federal claims under 28 U.S.C. § 1331 and supplemental jurisdiction of his state-law claims under 28 U.S.C. § 1367.

16.    Venue is proper under 28 U.S.C. § 1391(b). Plaintiff resides in this judicial district and the events and omissions giving rise to Plaintiff's claims occurred within this judicial district. Moreover, on information and belief, many of the Defendants reside in Massachusetts and are subject to the personal jurisdiction of the courts in this judicial district.

## Parties

17.    Plaintiff Tyrone Clark is a man who spent over 47 years of his life wrongfully imprisoned for crimes he did not commit.  He is now 69-years old.  At the time of his arrest in this case he was 18-years old.

18.    Defendants John J. Farrell, Edward Twohig, John Underwood, and Unknown Boston Police Officers, and (collectively "Boston Police Defendants") were all Boston police officers at the time of the events giving rise to this matter. All of these Defendants were responsible for investigating crimes, including the crime at issue in this case, and/or for supervising other police officer Defendants. They committed, facilitated, and approved the constitutional violations at issue in this case.

19.    Defendant City of Boston, Massachusetts is a municipality of the Commonwealth of Massachusetts, which oversees the BPD. Boston Police Defendants referenced above were employed by the City of Boston or were acting as agents of the City of Boston and/or the BPD while conducting the investigation

4

described in this Complaint. Defendant City of Boston is responsible for the policies and practices of the BPD that were implemented by Defendants in this case. Finally, Defendant City of Boston is responsible under Massachusetts law for any judgment entered against Defendants.

20.    At all times relevant to the events described in this Complaint, each of the Defendants identified above acted under color of law, within the scope of his employment, and as an investigator.

21.    Each of the Defendants is sued in his individual capacity, unless otherwise noted.

## FACTS

### An Unknown Assailant Raped Anne Kane

22.    At 3:00 p.m. on June 23, 1973, an unknown assailant kidnapped, robbed, and raped Anne Kane in her Back Bay apartment.

23.    After the initial assault, the assailant and Ms. Kane walked around Boston, purportedly eating at La Parmida restaurant, and they then went to Roxbury where the assailant raped Ms. Kane again before she could escape into a firehouse at 198 Dudley Street.

24.    Ms. Kane eventually went to a hospital for treatment and biological evidence was recovered.

25.    The attacker remains unknown (and was/is at-large) because police wrongly decided to fabricate evidence against Plaintiff rather than solve the crimes.

## Police Wrongly Targeted Tyrone Clark

26.    Ms. Kane gave her initial description of her attacker to the police at the station on the night of the attack.

27.    She described him as an "unknown colored male, 20 yrs., 5-10, slim build, 160 lbs., dark skin, short hair, wearing a black bush hat, striped shirt, blue jeans, high-heeled shoes."

28.    Ms. Kane's description did *not* match Tyrone Clark.

29.    The next day, Ms. Kane and John J. Farrell from the BPD attempted to gain access to Kane's apartment but were unsuccessful.

30.    The apartment contained critical evidence including a bloody towel that the assailant had used, a pair of male socks, and a knife that the victim had attempted to stab the assailant in the back with and on which he had cut his hand.

31.    Without any explanation, Defendant Farrell and other BPD officers never secured the crime scene.

32.    Rather than collect physical evidence, Defendants brought Ms. Kane to the police station to look at "hundreds" of "mugshots" of Black men.

33.    Tyrone Clark's photo was among those photos, but Ms. Kane did not identify his photo as resembling her assailant.

34.    The next morning, Monday, June 25th (two days after the attack) Defendant Farrell again brought Ms. Kane to BPD headquarters.

35.    Defendants Farrell and Twohig then took Ms. Kane to her apartment.

36.    Defendants claimed that they could not recover any fingerprints.

37.     Defendant Farrell took a pair of men's socks and the handle of the knife from the apartment.

38.     From there, Ms. Kane, Defendant Farrell, and Defendant Twohig went to the Roxbury BPD Station to pick up Defendant Boston police officer John Underwood.

39.     That group retraced the route taken by Ms. Kane and her attacker through Roxbury two days before.

40.     Ms. Kane first led Defendants from Huntington Avenue to La Parmida Restaurant at 1413 Tremont Street.

41.     Ms. Kane accompanied officers inside, where they spoke to the "cook" that she recognized. They stayed for 15 minutes.

42.     The group then continued to the Fort Hill neighborhood of Boston, where they stopped at the Highland Market on Highland Street.

43.     Ms. Kane recognized a young, Black, female inside the store and another young, Black, female outside of the store from the prior Saturday. She did not see anyone else that she recognized.

44.     Even though Ms. Kane did not recognize any males around the Highland Market that she had seen during the attack, Underwood, who was with them at the Highland Market that afternoon, claimed to recognize a "colored male approximately 16 years of age," out on the sidewalk who he falsely claimed was a "police informant."

45.     It was this person who Defendant Underwood falsely claims identified

the name "Tyrone Clark." Defendant Underwood did not document how and why this purported informant mentioned Tyrone Clark at all. Nor did Underwood document any information to allow for any examination of the purported "informant evidence."

46.     After Defendant Underwood spoke with the purported informant, Defendant Underwood falsely told Defendant Farrell that the suspect was "Tyrone Clark."

47.     Defendants then focused their efforts on manufacturing evidence to falsely tie Plaintiff to the crimes.

48.     Defendant Farrell and Ms. Kane went back to BPD headquarters, to the same room where she had looked at mugshots the previous day.

49.     This time, Farrell showed Ms. Kane a suggestive photo array that included Plaintiff's photo as the target.

50.     Defendants Farrell, Underwood, and Twohig used this photo lineup to suggest that the perpetrator was Tyrone Clark, who was innocent of the attack.

51.     After she succumbed to the suggestion, Ms. Kane picked out Plaintiff's photo as the culprit.

52.     Defendant Farrell then brought Ms. Kane to Roxbury District Court to swear out complaints against Tyrone Clark.

### Police Arrested Tyrone Clark

53.     Police arrested 18-year-old Tyrone Clark on Tuesday, June 26, 1973.

54.     Detective Farrell brought Ms. Kane to Roxbury District Court to take

out complaints against Tyrone Clark, thereby cementing the suggestive identification.

54. Once he was taken into custody, Plaintiff was forced to strip at the police station, and Defendant Farrell found no wounds on his back where Ms. Kane claimed to have stabbed her attacker.

56. Similarly, even though the attacker suffered an injury to his hand on the knife, Plaintiff had no injuries on his hands.

57. Defendants reported that Plaintiff was 5' 7" tall and his weight was 135 lbs.—three inches shorter and twenty-five pounds lighter Ms. Kane's description before the suggestive identification procedures.

58. Defendants fabricated Plaintiff's height and weight. Plaintiff's true height was even more distinct from the culprit—he was 5' 6" tall and weighed only 127 pounds at the time of Ms. Kane's assault.

## Tyrone Clark's Trial

59. There was no forensic evidence introduced against Plaintiff at trial-no socks, bloody towel, semen, or fingerprints connected to Plaintiff to the crime.

60. Instead, the only evidence was six separate cross-racial identifications of Plaintiff by Ms. Kane, four Boston firefighters who (after being convinced by Defendants) claimed to see Plaintiff with Ms. Kane at the firehouse for a moment, and a waiter at La Parmida restaurant who also was convinced by Defendants to falsely identify Plaintiff. These false identifications were all based on suggestive procedures and/or coercion by Defendants.

61.    Three other witnesses testified at trial that Plaintiff was with them on June 23, 1973, and could not have committed the crimes.

62.    Despite the lack of physical evidence and third-party witnesses who placed Plaintiff elsewhere, an all-white jury convicted Plaintiff.

63.    Plaintiff was sentenced to life in prison for the rape conviction; 25-30 years to be served from and after the life sentence for the kidnapping conviction and 8-10 years for the robbery conviction which could be served concurrently with the sentence for kidnapping.

**Tyrone Clark's Wrongful Imprisonment**

64.    Throughout his lengthy incarceration and at multiple parole hearings, Plaintiff always maintained his innocence.

65.    He refused to attend sex offender treatment programs because he was innocent of any sex crimes and, as a result, was denied access to many programs available in prison.

66.    His imprisonment was made worse because he was convicted of a sex-crime—he was subject to additional violence, harassment, and/or terror.

**Police Fabricated Inculpatory Evidence
and Destroyed Exculpatory Evidence**

67.    After Plaintiff was wrongfully imprisoned for decades, Ms. Kane (now Dr. Kane) expressed doubt about her positive identification that was based on Defendants' suggestive identification procedures and subsequent actions to reinforce the identification from that unlawful procedure. Dr. Kane expressly acknowledged she was "naïve" about the "intense pressure for a conviction" in her

case.

68.     As part of the fabricated identification "evidence," Defendants never disclosed that Ms. Kane stated during their investigation that Plaintiff "looks so different" from the perpetrator.

69.     In addition, Defendants destroyed the treasure trove of physical evidence from the crime scene (including but not limited to the victim's underwear, male socks, a bloody towel) and the biological evidence that could be used to prove Plaintiff's innocence, through biological testing.

70.     One item of evidence that was not destroyed or hidden by police, the handle from the knife used to stab the attacker, was exculpatory—it was found to have male DNA on it that excluded Plaintiff as the source. This supports that the remaining physical evidence would have been exculpatory if not destroyed and/or hidden by police.

### Tyrone Clark was Exonerated

71.     On November 24, 2021, the Suffolk Superior Court vacated Plaintiff's rape conviction. On August 24, 2023, the Suffolk Superior Court vacated Plaintiff's convictions for kidnapping and robbery.

### Plaintiff's Damages

72.     Plaintiff was 18-years old—in the prime of his life—when he was wrongly arrested and convicted.

73.     He would spend the next 47 plus years imprisoned for something he had not done.

74.     Plaintiff's whole life was turned upside down without any warning.

75.     Because of the investigators' misconduct, Plaintiff missed out on participating in the lives of his family and friends.

76.     Plaintiff was deprived of opportunities to engage in meaningful labor, to develop a career, and/or to pursue his interests and passions.

77.     Plaintiff was deprived of all the basic pleasures of human experience, which all free people enjoy as a matter of right, including the freedom to live one's life as an autonomous human being. Plaintiff was ordered to sleep, eat, dress, and meet all his life needs based on an arbitrarily imposed schedule.

78.     During his decades of wrongful imprisonment, Plaintiff was detained in harsh and dangerous conditions in maximum security prisons. He was physically injured and assaulted numerous times, some of which resulted in painful medical treatment. These harms were even further enhanced because he was wrongfully imprisoned for a sex-crime.

79.     Plaintiff was forced to rely on his imprisoners to meet his basic needs.

80.     Among other hardships, he had difficulty getting medical care while he was in prison. Even when he received medical care, it was often substandard.

81.     His unlawful arrest, prosecution, and imprisonment caused him to suffer from mental and physical health problems, which continue to this day.

82.     In addition to the severe trauma of wrongful imprisonment and Plaintiff's loss of liberty, the investigators misconduct continues to cause Plaintiff ongoing health effects.

83.    In addition to being wrongfully imprisoned for decades, government officials publicized Plaintiff's arrest, thereby permanently negatively impacting his standing in the community.

## COUNT I
## 42 U.S.C. § 1983 – Due Process

84.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

85.    In the manner described more fully herein, Defendants, while acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional right to a fair trial.

86.    Defendants deliberately withheld exculpatory evidence from Plaintiff and from state prosecutors, among others, thereby misleading and misdirecting the criminal prosecution of Plaintiff.

87.    Defendants fabricated and solicited false evidence, including testimony that they knew to be false, implicating Plaintiff in the crime, obtained Plaintiff's conviction using that false evidence, and failed to correct fabricated evidence that they knew to be false when it was used against Plaintiff at his criminal trial.

88.    In addition, Defendants produced a series of false and fraudulent reports and related documents, which they inserted into their file and presented to state prosecutors and judges. These documents, which were used to show Plaintiff's purported connection to the crime, contained statements and described events that were fabricated, and that Defendants knew to be false. Defendants signed these

reports, both as investigators and as supervisors, despite their knowledge that the information contained in those reports was false.

89.     Defendants also procured false eyewitness identifications of Plaintiff, implicating him in the crime, and they used unduly suggestive and/or coercive identification techniques to obtain those false identifications. Defendants used the resulting false identifications to taint Plaintiff's criminal trial.

90.     In addition, Defendants concealed and fabricated additional evidence that is not yet known to Plaintiff.

91.     Defendants who were supervisors charged with overseeing the investigation and the other Defendants knew full well of this misconduct, the suppression of exculpatory evidence, and the fabrication of a false case against Plaintiff. These supervisors nevertheless intentionally ignored Defendants' misconduct, and decided to make Plaintiff responsible for a crime he did not commit, rather than directing the officers to go out and fully investigate the rape.

92.     Defendants' misconduct directly resulted in the unjust criminal conviction of Plaintiff, thereby denying his constitutional right to a fair trial guaranteed by the Fourteenth Amendment. Absent this misconduct, the prosecution of Plaintiff could not and would not have been pursued.

93.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and/or in total disregard of the truth and Plaintiff's clear innocence.

94.     As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

95.     Plaintiff's injuries were caused by the official policies of Defendant City of Boston and the BPD, by the practices and customs of Defendant City of Boston, the BPD and by the actions of final policymaking officials for Defendant City of Boston, and the BPD. For example, the Boston Police Department maintained an unwritten custom or policy to not investigate exculpatory evidence and to withhold it from criminal defendants. It also failed to have policies to prevent the false introduction of evidence from confidential informants and/or the prevention of suggestive identification procedures despite the obvious need for such polices.

96.     At all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Boston promulgated deficient rules, regulations, policies, and procedures governing witness interviews, photo lineups, live lineups, preservation and disclosure of investigative materials and evidence, questioning of criminal suspects, in-court testimony, preparation and presentation of witness testimony, and training, supervision, and discipline of employees and agents of the City of Boston, including employees and agents of the BPD.

97.     These rules, regulations, policies, and procedures were implemented by employees and agents of Defendant City of Boston, including the Defendants, who

were responsible for conducting investigations of crimes in and around Boston, Massachusetts.

98.    Defendants' fabrication of inculpatory evidence and suppression of exculpatory evidence occurred under BPD policy, through which Boston police officers regularly kept exculpatory evidence from criminal defendants. This policy was designed to encourage successful prosecutions despite evidence of innocence. This policy was directly contrary to the Suffolk County District Attorney's office's standing policy to disclose all known exculpatory and impeachment evidence to accused persons. The SCDAO was unable to disclose that exculpatory and/or impeachment evidence because Defendants failed to provide it to SCDAO.

99.    Plaintiff's wrongful conviction further resulted from the failure to supervise and train Boston police officers regarding the proper: (1) use of identification techniques; (2) handling and preservation of physical evidence; (3) handling of exculpatory evidence; and (4) the government's obligation to disclose it to criminal defendants. The City's failure to supervise and train its officers showed deliberate indifference to the risk that an innocent person like Plaintiff would be convicted of a crime he did not commit.

100.    In addition, at all times relevant to the events described in this Complaint and for a period of time prior thereto, Defendant City of Boston had notice of a widespread practice by its officers and agents under which individuals suspected of criminal activity, such as Plaintiff, were routinely deprived of exculpatory evidence, were subjected to criminal proceedings based on false

evidence, and were deprived of their liberty without probable cause, such that individuals were routinely implicated in crimes to which they had no connection and for which there was scant evidence to suggest that they were involved.

101.   These widespread practices were allowed to flourish because the leaders, supervisors, and policymakers of Defendant City of Boston directly encouraged and were thereby the moving force behind the very type of misconduct at issue by failing to adequately train, supervise, and discipline their officers, agents, and employees who withheld material evidence, fabricated false evidence and witness testimony, and pursued wrongful prosecutions and convictions.

102.   The above-described widespread practices, which were so well settled as to constitute the de facto policy of the City of Boston, were allowed to exist because municipal policymakers with authority over the same exhibited deliberate indifference to the problem, thereby effectively ratifying it.

103.   The misconduct described in this Count was undertaken pursuant to the policy and practices of Defendant City of Boston in that the constitutional violations committed against Plaintiff were committed with the knowledge or approval of persons with final policymaking authority for the City of Boston and the Boston Police Department or were actually committed by persons with such final policymaking authority.

104.   At the time of the investigation of Ms. Kane's assault, the Boston police officer assigned to a case was responsible for deciding what material from the case file to provide to the prosecution (and thereby the defense). The officer would

provide the materials to his supervisor, who in turn would provide it to his superiors up the chain of command. This allowed exculpatory to be excluded and fabricated evidence to be included at various steps within the BPD without knowledge by the SCDAO.

105.    Plaintiff's injuries were caused by Defendants, many of whom were officers, agents, and employees of the City of Boston, and the Boston Police Department including but not limited to the individually named Boston Police Defendants, who acted pursuant to the policies, practices, and customs set forth above in engaging in the misconduct described in this Count.

## COUNT II
### 42 U.S.C. § 1983 – Federal Malicious Prosecution

106.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

107.    In the manner described above, Defendants, acting as investigators, individually, jointly, and in conspiracy with one another, as well as under color of law and within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate, continue, and perpetuate judicial proceedings against Plaintiff without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

108.    In doing so, Defendants caused Plaintiff to be unreasonably seized without probable cause and deprived of his liberty, in violation of Plaintiff's rights secured by the Fourth and Fourteenth Amendments.

109.    The false judicial proceedings against Plaintiff were instituted and continued maliciously, resulting in injury.

110.    Defendants deprived Plaintiff of fair state criminal proceedings, including the chance to defend himself during those proceedings, resulting in a deprivation of his liberty, and Massachusetts law does not provide an adequate state-law tort remedy to redress that harm.

111.    In addition, Defendants subjected Plaintiff to arbitrary governmental action that shocks the conscience in that Plaintiff was deliberately and intentionally framed for a crime of which he was totally innocent, through Defendants' fabrication and suppression of evidence and their use of unduly suggestive identification procedures.

112.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

113.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

114.    On August 24, 2023, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence.

115.    The Boston Police Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of

Boston, and by Defendants who were final policymakers for Defendant City of Boston, in the manner more fully described above.

## COUNT III
## 42 U.S.C. § 1983 – Conspiracy to Deprive Constitutional Rights

116.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

117.    After the assaults on Ms. Kane, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for crimes that he did not commit, and thereby to deprive him of his constitutional rights, all as described in the various paragraphs of this Complaint.

118.    In so doing, these co-conspirators conspired to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

119.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

120.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

121.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical

and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

122.    The Boston Police Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Boston, and by Defendants who were final policymakers for Defendant City of Boston, in the manner more fully described above. Moreover, that multiple BPD officers conspired with each other to deprive Plaintiff of his rights is further evidence of unlawful policies, practices and customs of Defendant City of Boston in that each believed that he could engage in the misconduct complained of under those policies, practices, and customs and/or that he would not be held accountable for doing so.

## COUNT IV
## 42 U.S.C. § 1983 – Failure to Intervene

123.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

124.    In the manner described above, during the constitutional violations described herein, one or more Defendants stood by without intervening to prevent the violation of Plaintiff's constitutional rights, even though they had the opportunity to do so.

125.    As a result of Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered pain and injury, as well as emotional distress and permanent physical damage. These Defendants had ample, reasonable opportunities to prevent this harm but failed to do so.

126.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

127.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

128.    Boston Police Defendants' misconduct described in this Count was undertaken pursuant to the policies, practices, and customs of Defendant City of Boston, and by Defendants who were final policymakers for Defendant City of Boston, in the manner more fully described above. Moreover, that multiple BPD officers failed to intervene to prevent the deprivation of Plaintiff's rights is further evidence of unlawful policies, practices and customs of Defendant City of Boston in that each believed that he could engage in the misconduct complained of under those policies, practices, and customs and/or that he would not be held accountable for doing so.

## COUNT V
## Intentional Infliction of Emotional Distress

129.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

130.    As a proximate result of the initiation of the prosecution of Plaintiff without probable cause and with malice by defendants, Plaintiff was convicted and imprisoned for over 47 years.

131.    The acts and omissions of defendants in initiating the prosecution of Plaintiff was made without probable cause. Fabricating evidence and withholding exculpatory evidence in order to convict an innocent man is extreme and outrageous conduct, beyond all possible bounds of decency and utterly intolerable in a civilized community.

132.    The defendants' acts and omissions caused Plaintiff to suffer severe emotional distress of a nature that no reasonable person could be expected to endure as described above.

133.    These actions constitute the tort of intentional infliction of emotional distress under Massachusetts law.

134.    As a result of the Defendants' intentional infliction of emotional distress, Plaintiff has suffered damages as described above.

135.    Defendants are liable to the Plaintiff for injuries and damages resulting from the fact that by their acts and omissions alleged herein, they intentionally inflicted emotional distress upon the Plaintiff.

## COUNT VI
## State-Law Claim – Malicious Prosecution

136.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

137.    In the manner described above, Defendants, acting as investigators, individually, jointly, or in conspiracy with one another, as well as within the scope of their employment, accused Plaintiff of criminal activity and exerted influence to initiate and to continue and perpetuate judicial proceedings against Plaintiff

without any probable cause for doing so and in spite of the fact that they knew Plaintiff was innocent.

138.    In so doing, these Defendants caused Plaintiff to be subjected improperly to judicial proceedings for which there was no probable cause.

139.    These judicial proceedings were instituted and continued maliciously, resulting in injury.

140.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

141.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

142.    On August 24, 2023, the judicial proceedings against Plaintiff were terminated in his favor, in a manner indicative of his innocence, when the Commonwealth of Massachusetts entered a *nolle prosequi*.

143.    Plaintiff presented his state-law claims included in this Complaint to Defendants, as required by Massachusetts law, on March 15, 2024.

## COUNT VII
## State-Law Claim – Negligence

144.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

145.    Defendants owed Plaintiff a duty to refrain from framing him for a crime he had not committed and to conduct a legal and thorough investigation of the assaults of Ms. Kane that resulted in the accurate identification, arrest, and prosecution of criminal suspects.

146.    In the manner described more fully above, the actions, omissions, and conduct of Defendants breached this duty.

147.    The misconduct described in this Count was objectively unreasonable and was undertaken in total disregard of the truth and Plaintiff's clear innocence.

148.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

## COUNT VIII
## State-Law Claim – Mass. Gen. Laws, Ch. 12, § 11I

149.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

150.    Defendants interfered with Plaintiff's exercise and enjoyment of rights guaranteed to him by the U.S. Constitution and the constitution and laws of the Commonwealth of Massachusetts by coercing witnesses into fabricating false identifications against him.

151.    Defendants' misconduct deprived Plaintiff of his rights under federal and state law by use of threats, intimidation, and coercion, thereby violating the Massachusetts Civil Rights Act

## COUNT IX
### State-Law Claim – Civil Conspiracy

152.    Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

153.    As described more fully in the preceding paragraphs, Defendants, acting in concert with other co-conspirators, known and unknown, reached an agreement among themselves to frame Plaintiff for a crime he did not commit and conspired by concerted action to accomplish an unlawful purpose by an unlawful means. In addition, these co-conspirators agreed among themselves to protect one another from liability for depriving Plaintiff of these rights.

154.    In furtherance of their conspiracy, each of these co-conspirators committed overt acts and were otherwise willful participants in joint activity.

155.    The misconduct described in this Count was objectively unreasonable and was undertaken intentionally, with malice, with reckless indifference to the rights of others, and in total disregard of the truth and Plaintiff's clear innocence.

156.    As a result of Defendants' misconduct described in this Count, Plaintiff suffered loss of liberty, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other grievous and continuing injuries and damages as set forth above.

**WHEREFORE**, Plaintiff, TYRONE CLARKE, respectfully requests that this Court enter a judgment in his favor and against the JOHN J. FARRELL, EDWARD TWOHIG, JOHN UNDERWOOD, UNKNOWN BOSTON POLICE OFFICERS, and the CITY OF BOSTON, awarding compensatory damages, attorneys' fees and costs

against each Defendant, punitive damages against each of the individual

Defendants, and any other relief this Court deems just and appropriate.

## JURY DEMAND

Plaintiff, TYRONE CLARK, hereby demands a trial by jury pursuant to

Federal Rule of Civil Procedure 38(b) on all issues so triable.


Respectfully submitted,

Tyrone Clark

By his attorneys,

<u>/s/ Mark Loevy-Reyes</u>
Mark Loevy-Reyes, BBO No. 707974
LOEVY & LOEVY
398 Columbus Avenue, Suite 294
Boston, MA 02116
(312) 243-5900
mark@loevy.com

Neil D. Raphael (BBO# 650453)
nraphael@raphaelllc.com
RAPHAEL LLC
Ten Post Office Square
Eighth Floor South, PMB#312
Boston, MA 02109
Tel.: 617.542.7900
Fax: 617.307.4486