IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| TYRONE CLARK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 1:24-cv-12389 |
| v. ) | |
| ) | |
| JOHN J. FARRELL, EDWARD TWOHIG, ) | |
| JOHN UNDERWOOD, UNKNOWN ) | |
| BOSTON POLICE OFFICERS, and the ) | |
| CITY OF BOSTON, ) | |
| ) | **Jury Trial Demanded** |
| Defendants. ) | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SUBSTITUTE AND APPOINT REPRESENTATIVES OR, IN
THE ALTERNATIVE, LEAVE TO FILE AMENDED COMPLAINT**

Plaintiff, Tyrone Clark, submits this memorandum in support of his motion to permit him to proceed against Deceased Defendants JOHN J FARRELL, JOHN N. UNDERWOOD, and EDWARD LEO TWOHIG ("Decedents") in their own names, through Defendant City of Boston, in the Alternative, Leave to File an Amended Complaint, as follows:

INTRODUCTION

Defendants Farrell, Underwood, and Twohig fabricated evidence that led to Plaintiff's wrongful conviction for rape, kidnapping, and robbery. Dkt. No. 1. Plaintiff, therefore, brought claims against them under 42 U.S.C. §1983. *Id*. Plaintiff was advised that these three Defendants are deceased.

Massachusetts law allows Plaintiff to proceed against these Defendants through the entity that may be responsible for paying any judgment. Here, the

entity responsible for judgments against Defendants Farrell, Underwood, and/or Twohig is Defendant City of Boston. Plaintiff, therefore, asks for leave to proceed with his claims against these three Defendants through Defendant City of Boston. In the alternative, Plaintiff asks for leave to amend his complaint to name the estates of two of these three named Defendants.

## PROCEDURAL BACKGROUND

On September 18, 2024, Plaintiff filed this lawsuit alleging that Defendants framed him for a rape, kidnapping, and robbery that he did not commit. Dkt No. 1. The victim of those crimes has walked back her identification of Plaintiff that was obtained by the named Defendants. *Id.*, ¶67. As a result of Defendants' misconduct, Plaintiff spent more than 47 years in prison before he was exonerated. *Id.*, ¶73.

Defendants named in the Complaint are Farrell, Underwood, Twohig, Unknown Boston Police Officers, and The City of Boston. *Id.*

Plaintiff served the named individual Defendants with Summons and Complaints as follows: (1) on Defendant Twohig through service on his wife's last known address on October 8, 2024 (Dkt. No. 5); and (2) on Defendant Underwood through service on his daughter, Kristen Neves, on October 8, 2024 (Dkt. No. 6). Plaintiff was unable to locate any contact information for anyone related to Defendant Farrell, who appears to have died in 1979. On November 1, 2024, Ms. Neves filed confirmation that Mr. Underwood had died in 2012.

Plaintiff was unable to locate any open probate proceedings instituted for Defendants Farrelly, Underwood, and/or Twohig.

2

# ARGUMENT

### A. PLAINTIFF'S CLAIMS AGAINST DECEASED DEFENDANTS ARE PROPER

The Civil Rights Act directs that where federal law is "deficient in the provisions necessary to furnish suitable remedies and punish offenses against law," a federal court must look to the laws of the state where it sits to afford remedies under the law. 42 U.S.C. §1988; *see also Echavarria v. Roach et al.*, No. 1:16-cv-11118 (D. Mass.) (docket entry 92, text order dated 4/28/2017).

Here, Massachusetts law provides a remedy to allow Plaintiff to proceed against representatives of Deceased Defendants. A personal representative may be served in an action if the lawsuit is commenced within three years of the accrual of claims "for personal injury or death." M.G.L. c. 190B, §3-803(d)(2). *See also Fellows v. Perenzin*, No. 001445A, 2003 WL 734416, at *1 (Mass. Super. Ct., Jan. 8, 2003) (explaining the same under the prior iteration of the probate statute).

In such a case, satisfaction of the judgment must be sought from a liability bond or insurance policy, not from the general assets of the estate. In addition, where a "personal representative has not been appointed," an action may proceed "naming the decedent as the defendant" and completing service of process on the entity providing the liability bond or insurance. M.G.L. c. 190B, §3-803(d)(2). Plaintiff unequivocally intends only to pursue satisfaction of any judgment against any deceased Defendant through Defendant City of Boston and not from any estate. There are no currently serving personal representatives that Plaintiff can identify. Service on Defendant City of Boston is, therefore, proper.

This three-year accrual rule supersedes the general rule that actions must be commenced within one year of the death of the deceased. *See* M.G.L. c. 190B, § 3-803(a). Consistent with the mandate of the Civil Rights Act to look to state law to allow persons to challenge unlawful government conduct, judges in this District have invoked this provision to allow for plaintiffs to proceed against defendants who were deceased before the claims accrued.

Judge Sorokin in *Rosario v. Waterhouse, et al.* analyzed the issue in depth and concluded that the civil rights plaintiff there, who alleged similar allegations to Plaintiff here, could proceed against the deceased defendants under §3-803(d)(2). *Rosario v. Waterhouse*, No. 1:19CV-10532-LTS, 2019 WL 4765082, at 3-4 (D. Mass. Sept. 27, 2019). Judge Sorokin subsequently allowed direct service on the Defendant City of Lowell there after it was determined that there was no open estate for the previously deceased defendants. *Rosario v. Waterhouse*, No. 1:19CV-10532-LTS, Dkt. No. 92 (February 3, 2020) (attached as Ex. 4). Likewise, Judge Guzman allowed for a wrongful conviction claim in *Cifizzari v. Town of Milford et al*, Civil No. 4:22-cv-40139-MRG to proceed against deceased defendants there through their municipal employer/indemnitor. *See Cifizzari v. Town of Milford*, No. 4:22-cv-40139-MRG, 2024 WL 869149, at *4 (D. Mass. Feb. 29, 2024). Similarly, Judge Talwani allowed the wrongful conviction plaintiff in, to proceed against previously deceased defendants, and to discern whether service would be on personal representatives or any entity providing insurance or a liability bond.

*Weichel v. Town of Braintree et al*, No. 1:20-cv-11456, Dkt. No. 86 (May 13, 2021) (attached as Ex. 5).

In short, the appointment and/or substitution of a representative for a previously deceased defendant generally and against a municipal indemnitor is allowed under the mandate of the Civil Rights Act to allow plaintiffs to vindicate their rights. Massachusetts law provides the mechanism for Plaintiff to proceed against all of those who violated his rights.

1. **Plaintiff filed his claims within three years of accrual.**

Plaintiff's claims fully accrued in 2023 when the Commonwealth ended its wrongful prosecution of Plaintiff. Plaintiff filed his Complaint on September 18, 2024, within three years after his claims accrued. Dkt. No. 1, ¶114. Although the statute of limitations for a § 1983 case is based on state law (here three years), the accrual date "'is a question of federal law that is *not* resolved by reference to state law.'" *Williams v. City of Boston*, 771 F. Supp. 2d 190, 201 (D. Mass. 2011) (quoting *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in *Wallace*)); *see also Hernandez-Cuevas v. Taylor*, 723 F.3d 91, 96 (1st Cir. 2013) (same). A cause of action accrues only when "the plaintiff has a complete and present cause of action, that is, when the plaintiff can file suit and obtain relief." *Heck v. Humphrey*, 512 U.S. 477, 488 (1993) (internal quotes and citation omitted). *Heck* provides that claims that would necessarily impugn a conviction cannot be brought until after the criminal proceedings underlying the conviction are completed. *Id.* at 486-87; *see also*

*Thompson v. Clark*, 596 U.S. 36 (2022); *Statchen v. Palmer*, 623 F.3d 15, 18 n.1 (1st Cir. 2010).

Here, Plaintiff's claims did not accrue until the criminal proceedings that resulted in his wrongful conviction and incarceration were completely dismissed. *Id.* Because Plaintiff filed this action well within three years of that date, he may pursue claims against Deceased Defendants' indemnitor representative.

### 2. Plaintiff's claims are for "personal injury."

A claim that the violations of rights caused a wrongful conviction is inherently one for personal injury, so the three-year accrual rule for deceased defendants applies. *See, e.g., Rosario v. Waterhouse*, No. 1:19-CV-10532-LTS, 2019 WL 4765082, at *3 (D. Mass. Sept. 27, 2019) ("Given that Massachusetts courts consistently embrace a broad understanding of personal injury claims, the Court concludes that Rosario's claims constitute 'an action for personal injury' within the meaning of subsection (d)(2)") (citing *Pomeroy v. Ashburnham Westminster Reg'l Sch. Dist.*, 410 F. Supp. 2d 7, 12-13 (D. Mass. 2006) (holding that an action under 42 U.S.C. § 1983 alleging a deprivation of procedural due process should be treated as a claim for personal injury under Massachusetts law); *Litif v. United States*, 682 F. Supp. 2d 60, 83 (D. Mass. 2010), *aff'd*, 670 F.3d 39 (1st Cir. 2012) (holding that "[d]amages to the person need not be physical" under Massachusetts law); and *Harrison v. Loyal Protective Life Ins. Co.*, 396 N.E.2d 987, 989 (Mass. 1979) (rejecting a "narrow construction of 'damage to the person' ")). Plaintiff's claims

against the deceased Defendants, therefore, fall under the three-year accrual rule of the Massachusetts Uniform Probate Code.

### 3. Claims under the Civil Rights Act survive a defendant's death.

Courts in this District, including in the cases of *Cifizzari*, *Weichel* and *Rosario* (among others), recognize that claims under the Civil Rights Act against deceased defendants for fabricating inculpatory evidence and suppressing exculpatory evidence are viable even if a case is commenced after the death of a defendant. *Cifizzari*, 2024 WL 869149, at *1 (D. Mass. Feb. 29, 2024). Courts in this District, consistent with the Civil Rights Act itself, adjudicate previously deceased defendants for claims such as Plaintiff's. *See e.g. Limone v. Condon*, 372 F.3d 39 (1st Cir. 2004); *Cifizzari; Weichel*; *Rosario*.

### B.   PURSUING CLAIMS AGAINST THE DECEASED DEFENDANTS THROUGH THEIR MUNICIPAL EMPLOYER IS PROPER

Plaintiff's request to serve Defendant City of Boston for the actions against Deceased Defendants is proper. Massachusetts law allows for a plaintiff to proceed against an entity if that entity may be obligated to pay for a resulting judgment.

Serving a municipality is not an extraordinary remedy. Massachusetts law already has a mechanism to serve public employers. *See* M.G.L. c. 258 § 6 ("The public attorney shall defend all civil actions brought against a public employer or public employee of the commonwealth pursuant to this chapter. Service of process for such civil action shall be made upon the public attorney or, where no such public attorney has been employed for such purpose at the time service is made, service shall be made upon the executive officer of such public employer.").

7

That Defendant City of Boston is a *de facto* liability bond holder and/or liability insurance provider through indemnification allows Plaintiff to serve it to pursue claims against its employees. *See Cifizzari*, 2024 WL 869149, at *4; *Rosario*, 2019 WL 4765082, at *3-4. At issue in *Cifizzari* and *Rosario* was whether the municipality would be called upon to cover the liability of its employees so that the obligation could be considered a "policy of liability bond" under Mass. Gen. Laws ch. 190B, §3-803(d)(2). *See Cifizzari*, 2024 WL 869149, at *3; *Rosario*, 2019 WL 4765082, at *3.

The Court in *Rosario* noted that the term "liability bond" was not defined in the statute itself, so it used the term in its ordinary sense. *Rosario*, 2019 WL 4765082, at *3 (citing *Casey v. Mass. Elec. Co.*, 467 N.E.2d 1358, 1362 (Mass. 1984)). It then noted that "at its most elementary, a bond is simply a 'written promise to pay money or do some act if certain circumstances occur.'" *Id.* (citing Black's Law Dictionary 200 (Bryan A. Garner ed., 9th ed. 2009)). A "liability bond" is a "bond intended to protect the assured from a loss arising from some event specified in the bond." *Id.*

Whether the promise to pay or commit an act is labeled a "liability bond" is irrelevant to determine whether a party can proceed against a municipality as Plaintiff seeks here:

> Critically, in determining whether the City's indemnification obligation is a liability bond for purposes of the statute, the Court "disregard[s] nomenclature and look[s] at the substance of the bond itself," noting that "it makes no difference whether a bond is designated by that name or by some other, if it possesses the characteristics of a bond."

8

*Rosario*, 2019 WL 4765082, at *3 (citing 1 Silvester E. Quindry, Bonds & Bondholders Rights & Remedies § 2, at 3-4 (1934)); *see also Cifizzari*, 2024 WL 869149, at *4.

Defendant City of Boston's indemnification of its employees for claims against law enforcement employees is a "policy of liability bond" or "liability insurance" for purposes of proceeding directly against the municipalities:

> Here, the legislature allowed personal injury plaintiffs to proceed against decedents when they are protected by precisely the sort of written promise that the City gives to its employees. Thus, the City's indemnification obligation must be understood as "a policy of liability bond" within the meaning of subsection (d)(2).

*Rosario*, 2019 WL 4765082, at *3.

There are very important policy reasons that support interpreting a duty to indemnify as a "liability bond" for purposes of allowing a direct action against the obligor. "First, an alternative reading would provide a windfall to municipalities whenever their employees cause personal injury or death but pre-decease the expeditious filing of a lawsuit, thus visiting grave injustice on injured parties." *Id.*, at *4 (citing *Nutter v. Woodard*, 614 N.E.2d 692, 695 (Mass. App. Ct. 1993) ("For us to rule against [the plaintiff] in these circumstances would be to allow the insurer [or bond provider] a windfall due to the fortuity that there was but one potentially negligent party for [the plaintiff] to sue.")).

Second, the legislative concerns that justify a shorter statute of limitations for claims against decedents have no force when indemnification, rather than the assets of an estate, will support a final judgment. *Rosario,* 2019 WL 4765082, at *4

9

(citing *Doyle v. Moylan*, 141 F. Supp. 95, 97 (D. Mass. 1956) (noting that the Massachusetts legislature truncated the statute of limitations to "facilitate the prompt settlement of estates"); *accord Hanna v. Plumer*, 380 U.S. 460, 463 n.1 (1965). Allowing Plaintiff to proceed by serving the Defendant City of Boston would avoid a statutory "construction ... that would lead to an absurd and unreasonable conclusion," and instead adopt "a construction that would lead to a logical and sensible result." *Id*. (quoting *Arlington Contributory Ret. Bd. v. Contributory Ret. Appeal Bd.*, 914 N.E.2d 957, 963 (Mass. App. Ct. 2009)) (quoting *Bell v. Treasurer of Cambridge*, 38 N.E.2d 660, 664 (Mass. 1941)).

Another basis to allow the relief sought by Plaintiff here is that it will effectuate the purposes of federal civil rights laws, including 42 U.S.C. § 1983. Congress expressly provided in section 1988(a) that:

> the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil . . . cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, *shall* be extended to and govern the said courts in the trial and disposition of the cause[.]

42 U.S.C. § 1988 (emphasis added); *see also Hardin v. Straub*, 490 U.S. 536, 538 (1989). The statute mandates that federal courts adopt state laws to the extent necessary to allow for civil rights actions to be prosecuted. *SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) ("The word 'shall' generally imposes a nondiscretionary duty.").

Defendant City of Boston may argue that its indemnification obligation is discretionary, not mandatory, but such an argument misses the point. Plaintiff's

request here is not asking that the City of Boston be mandated to pay any judgment. Rather, it is asking for a procedure under Massachusetts law to bring these claims against the individual Defendants in the first place. There are many instances in which insurance or bondholder obligations are disputed after the outcome of litigation. That does not change the relationship at the beginning of the litigation as to who may be liable. Allowing Plaintiff to institute these claims under Massachusetts law is consistent with the Civil Rights mandate that state law procedures be utilized to allow for parties to seek redress from alleged government misconduct.

## C.    DEFENDANT CITY OF BOSTON IS THE INDEMNITOR

To be clear, allowing Plaintiff to proceed against the deceased Defendants does not create an obligation that the City of Boston must indemnify them at the conclusion of the case. There are two separate issues at play: whether Plaintiff may pursue the claims against the individual officers and whether the City of Boston will determine that any judgment or settlement meets its conditions to indemnify. Plaintiff's motion only addresses the first issue. The second issue can only be resolved at the conclusion of the case. The same is true for any case involving a liability bond or insurance—whether the policies are triggered is dependent on the outcome of the litigation.

Here, Defendant City of Boston has a policy to generally indemnify officers for claims such as these. First, it always indemnifies officers for claims such as

these unless it has fired the employee for the same misconduct. Second, it has obligated itself through collective bargaining to indemnify.

### 1. The City of Boston's practices create a de facto policy to indemnify.

The City of Boston maintains practices so consistent and pervasive as to constitute municipal policies to indemnify officers for misconduct occurring in the scope of employment. In deciding what constitutes municipal policy for claims under 42 U.S.C. §1983, the United States Supreme Court has stated that government practices that are persistent and widespread can practically have the force of law (or policy). *See Connick v. Thompson*, 563 U.S. 51, 60-61 (2011) (citations omitted). This is consistent with the long line of cases supporting that even if there is no official municipal policy, a plaintiff may prove the existence of a policy based on practices that are "so permanent and well settled as to constitute a 'custom or usage' with the force of law." *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690, 691 (1978) (citations omitted); *see also Schand v. City of Springfield*, 380 F. Supp. 3d 106, 131 (2019).

That standard should apply here—a municipality's ongoing practices can constitute policy of indemnifying employees for purposes of proceeding against deceased defendants. Even though the City of Boston technically has the discretion to decide indemnification, it never exercises that discretion to deny indemnification for actions taken in the scope of employment. Its pervasive practice to always indemnify law enforcement officers for claims of misconduct in the scope of employment has the force of policy.

Even traditional liability bondholders or insurers have discretion to decide whether to pay the bond or insurance (determinations are always made whether the conditions are met to pay the bond or insurance). This does not set them outside Massachusetts law allowing for actions to be taken directly against them for defendants who died more than one year before the commencement of the action.

So should it be for municipal indemnification. Here, the City of Boston has created uniform and consistent practices to defend and indemnify law enforcement officers for liability in the scope of employment. Those practices have the force of policy to indemnify similarly situated officers, such as Defendants Farrell, Underwood, and Twohig.

Since 2018, the City of Boston has obligated itself to defend and indemnify all but one officer (who was fired for the conduct) for liability stemming from actions taken in the scope of employment. *See* Ex. 1, ¶¶9-12. That indemnification included paying more than $44 million in that five-year period. *Id.*, ¶10. The COB's indemnification and payments included cases that can be traced back to misconduct occurring during the 1970s, just after the date of Plaintiff's wrongful arrest and prosecution (*see* Exhibit A to Ex. 1, identifying payments to Fred Clay and James Watson, who were both wrongfully convicted of a 1979 murder—*Com. v. Watson*, 388 Mass. 536 (1983)). Plaintiff's *Brady* claims were continuing claims until he was finally released from custody.

As a self-insured entity, the COB has the sole responsibility for deciding whether to indemnify, and it always chooses to do so (unless it has fired the officer for the exact same conduct, a situation that did not happen here). *Id.*, ¶¶7-13.

These practices, which rise to the level of policy, makes the City of Boston the functional equivalent of a liability bondholder or insurer under Massachusetts law. Mass. Gen. Laws ch. 190B, § 3-803(d)(2); *Rosario v. Waterhouse*, 1:19-cv-10532, 2019 WL 4765082, at *3 (D. Mass. Sept. 27, 2019).

### 2. The City of Boston's collective bargaining agreements create a policy of indemnification.

The City of Boston maintains collective bargaining agreements (CBA) with its police officers. These agreements are binding contracts. "[A] contract must not, whenever possible, be construed so as to render any of its terms meaningless." *Baybank Middlesex v. 1200 Beacon Properties, Inc.,* 760 F.Supp. 957, 963 (D. Mass. 1991). The First Circuit affirmed this principle in *Axia Netmedia Corp. v. Mass. Tech. Park Corp.*, 889 F.3d 1 (1st Cir. 2018), where it rejected plaintiff's interpretation of a contract clause because under the plaintiff's interpretation, the clause "would do no work." *Id.*, at 9.

The CBAs require that the City of Boston will indemnify to the maximum amount allowed under Massachusetts law:

> The City *will* represent and indemnify bargaining unit members to the extent permitted by M.G.L. c. 258 § 9. (emphasis added).

Ex. 2 (at 45, §13) and Ex. 3 (at 58, §11). (emphasis added).

The statement that the City "will" do these things is the language of requirement, not discretion. The use of "will" make indemnification to the

14

maximum amount mandatory when claims are based on misconduct in the scope of employment.

M.G.L. c. 258 § 9 allows the City of Boston the discretion to indemnify on a case-by-case basis. Therefore, there would be no need to include the indemnification language in the CBA unless it provided protection for the employees above and beyond that already provided by the law. A plain and logical reading of the CBA terms reveals that the parties agreed that the City of Boston would offer something beyond that for which it was already charged with. Further supporting this interpretation is the CBA's language requiring representation in the litigation—something that Massachusetts indemnification law is silent about. This supports that the parties negotiated protection for the officers above what Massachusetts law already provided.

The City bargained with the unions in good faith to create the CBAs. It obligated itself (it is hornbook law that the use of the word "will" in a contract is mandatory) to indemnify its officers under Massachusetts law. That law provides for indemnification with two requirements: (1) indemnification cannot exceed one million dollars; and (2) the wrongful act at issue must have been taken by the employee "within the scope of his official duties or employment." M.G.L. c. 258 § 9. Under the CBA, the City bound itself to indemnify up to one million dollars for claims arising in the scope of employment. To read the CBA as merely parroting the statute and not mandating indemnification would render these provisions a nullity. Such a result would be contrary to the rules of contract interpretation.

It would also violate Massachusetts law, which requests that a contract for insurance must be strictly construed in favor of the insured if there is any ambiguity. *Siebe, Inc. v. Louis M. Gerson Co., Inc.*, 74 Mass. App. Ct. 544, 554 (2009).

The only logical reading of the City of Boston's indemnification agreement is that it agreed to exercise its discretion to indemnify police officers acting in the scope of their duties.

Defendant City of Boston may cite to *Williams v. City of Brockton*, No. 12–10430–JGD, 2013 WL 254778 (D. Mass. Jan. 23 2013) or *City of Boston v. Boston Police Patrolmen's Association, Inc.*, 48 Mass. App. Ct. 74 (Suffolk 1999) to deny the plain meaning of the CBAs. Neither of these cases are controlling or otherwise apply here.

In *Williams*, the contract language on its face adopted the statute: "[t]he policy for indemnification of officers for acts within the scope of employment shall be as per M.G.L. c. 258, § 9." *Williams v. City of Brockton*, 2013 WL 254778 at *8. That language does not contain the mandatory "will represent and indemnify" language included in the CBAs, which adds additional protections including the use of the mandatory "will" and requires representation as well. *Boston Police Patrolman's Ass'n* addressed the issue of whether an arbitrator could mandate indemnification, not whether a collective bargaining agreement was binding.

The Plaintiff's reading of the CBA is corroborated by the City's practice (constituting a policy as stated above) of always indemnifying officers for actions

16

taken in the scope of employment. The lone time since 2018 that the City declined to indemnify an officer was when it concluded that the actions were outside the scope of employment and it terminated the employee.

### D.   IN THE ALTERNATIVE, PLAINTIFF ASKS LEAVE TO FILE AND AMENDED COMPLAINT FOR TWO OF THE DEFENDANTS

Should the Court conclude that Plaintiff may not proceed against these three deceased Defendants, Plaintiff asks leave to amend his Complaint under Federal Rule of Civil Procedure 15 to name the estates of each of those deceased defendants who are eligible to have estates created—Defendants Farrell and Twohig. It would be Plaintiff's intention to seek to open estates for these two Defendants for purposes of bringing claims against them. Plaintiff cannot seek to open an estate for Defendant Underwood, who died after the enactment of the Massachusetts Uniform Probate Code. Mass. Gen. Laws ch. 190B (2012).

Leave to file amendments under Rule 15 "should freely give leave when justice so requires." FED. R. CIV. P. 15. Here, the interests of justice would be served because allowing amendments would allow for Plaintiff to proceed on his claims against these two individuals to vindicate the violation of his rights under the United States Constitution.

### CONCLUSION

Plaintiff seeks the most direct remedy that will allow him to pursue his claims against Deceased Defendants, alleging that his rights were violated. The remedies are administrative and do not adversely impact the substantive position of any party. The remedy allowing Plaintiff to proceed with his claims against the

deceased Defendants through Defendant City of Boston, which is an indemnitor of its employees, is in the interest of justice because it will allow Plaintiff to vindicate his rights in this Court and will serve the important mandates of the Civil Rights Act. Should the Court decided that Plaintiff may not proceed against the Deceased Defendants through the City of Boston, Plaintiff alternatively asks leave to file an Amended Complaint to substitute two of the Deceased Defendants with their estates.

January 27, 2025

                                                                               RESPECTFULLY SUBMITTED,

                                                                               **TYRONE CLARK**

                                          BY**:**    /s/ Mark Loevy-Reyes
                                                                    *One of Plaintiff's Attorneys*

*Attorneys for Plaintiff*
Mark Loevy-Reyes, BBO No. 707974
Loevy & Loevy
398 Columbus Avenue, #294
Boston, MA 02116
Ph: (312) 243-5900
Fax: (312) 243-5902
mark@loevy.com

Neil D. Raphael (BBO# 650453)
nraphael@raphaelllc.com
RAPHAEL LLC
265 Franklin Street
Suite 1702
Boston, MA 02110
Tel.: 617.542.7900
Fax: 617.307.4486

## CERTIFICATE OF SERVICE

    I, Mark Loevy-Reyes, an attorney, hereby certify that on January 27, 2025, I filed the foregoing **PLAINTIFF'S MEMORANDUM OF IN SUPPORT OF MOTION TO SUBSTITUTE AND APPOINT REPRESENTATIVES** using the Court's CM/ECF system, which effected service on all counsel of record.

                                               /s/ Mark Loevy-Reyes
                                               *One of Plaintiff's Attorneys*